UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JUSTUS HIRSCHMAN,<br><br>            Plaintiff,<br><br>    vs.<br><br><br>AGRARIA INSURANCE COMPANY,<br><br>            Defendant. | 4:23-CV-04123-KES<br><br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART PLAINTIFF'S<br>MOTION TO COMPEL |

**INTRODUCTION**

A discovery dispute is before the court on the complaint of Justus Hirschman against his farm and ranch insurer, Agraria Insurance Company. See Docket Nos. 1 & 14; Docket No. 24-3 at 15:8–10.[1] Mr. Hirschman alleges breach of contract and bad faith for Agraria's handling of a claim he made following a hailstorm in Yankton, South Dakota, on May 28, 2022. See generally Docket No. 1.

Mr. Hirschman moves the court to compel production of information and documents withheld by Agraria. Docket No. 14 at p. 1. Mr. Hirschman further seeks an award of attorney's fees and expenses as recompense for bringing the motion. Id. Pursuant to 28 U.S.C. § 1332, jurisdiction is premised on the

---

[1] Citations to transcripts in this opinion will be as to the transcript page number, regardless of the page number within the court's docketing system.

parties' diversity of citizenship.[2]  Docket No. 1, ¶ 3; Docket No. 5, ¶ 4.  This opinion resolves Mr. Hirschman's motion to compel [Docket No. 14], which the district court judge referred to this magistrate judge.  Docket No. 25.

## FACTS[3]

Mr. Hirschman owns property in Yankton, South Dakota, "which contains multiple farm related buildings including a house, garages, cattle sheds, a chicken barn, a carriage building, and grain bins."  Docket No. 1, ¶ 5. On or about May 28, 2022, that property was insured (including for hail damage) under a policy provided by Agraria.  Id. ¶¶ 6–8.  And on that day, the property, including "various buildings' roofing, siding, gutters, and grain bin sections," was damaged in a "severe hailstorm."  Id. ¶¶ 10, 13.

Mr. Hirschman submitted a timely claim to Agraria, who delegated the inspection of the property to "authorized agents."  Id. ¶¶ 14–15.  Following that inspection, Agraria offered what Mr. Hirschman considered "an unreasonably low amount to settle the claim."  Id. ¶ 16.  Areas of contention include the refusal of payment of "overhead and profit costs," the exclusion of "various

---

[2] Although Agraria disagrees that the amount in dispute surpasses the jurisdictional threshold of $75,000, Docket No. 5, ¶ 4, the court finds that Mr. Hirschman "alleges the jurisdictional amount in good faith"—a finding sufficient to adjudicate this matter.  Kopp v. Kopp, 280 F.3d 883, 884 (8th Cir. 2002) (citations omitted); compare, e.g., Docket No. 5, ¶ 17 with Docket No. 31-4.

[3] To consider Mr. Hirschman's motion, the court takes the facts as asserted in the complaint and plaintiff's briefs.  No imprimatur of the court as to their veracity is intended.

inventory" in the estimate, and the use of software populated with obsolete pricing.  Id. ¶¶ 17–19.

Mr. Hirschman provided Agraria with three estimates to demonstrate the proper value of his claim.  Id. ¶¶ 20–23.  One of these estimates was from Mr. Hirschman's own business, H&H Roofing.  See Docket No. 31-4.  The parties disagree over Mr. Hirschman's involvement and influence over the development of the remaining two.  See Docket No. 30 at pp. 3–4.  Nevertheless, "[e]ach of the three companies arrived at similar bid amounts which were substantially greater than the amount [Agraria] provided to settle the claim."  Docket No. 1, ¶ 21.  Mr. Hirschman claims breach of contract and bad faith, including a "pattern and practice of refusing to provide coverage and honor the plain terms of its insurance contract."  Id. ¶¶ 40–57.  Mr. Hirschman seeks punitive damages, alleging Agraria's "refusal to provide coverage" as "willful, wanton and with reckless disregard."  Id. ¶ 58.

## DISCUSSION

### A.    Discovery, Generally

"Discovery is a[n] investigatory tool intended to help litigants gain an understanding of the key persons, relationships, and evidence in a case and . . . the veracity of those persons and purported evidence."  Sentis Grp., Inc. v. Shell Oil Co., 763 F.3d 919, 926 (8th Cir. 2014).  The process of discovery aids in "narrowing and defining the disputed legal and factual issues."  Williams v. McClain, 708 F. Supp. 1086, 1090 (W.D. Mo. 1989).

Information sought through discovery must be (1) nonprivileged; (2) "relevant to any party's claim or defense"; and (3) "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).

Discovery, like the evidence it seeks, "is relevant where it 'has a tendency to make a fact [that is of consequence in determining the action] more or less probable than it would be without the evidence.'" Lynch v. Experian Info. Sols., Inc., 581 F. Supp. 3d 1122, 1126 (D. Minn. 2022) (quoting FED. R. EVID. 401) (alteration in original).  But unlike trial evidence, discovery is not curtailed by most of the limiting features of the Federal Rules of Evidence.  Richter v. XL Ins. Am. Inc., 4:23-CV-04094-CCT, 2024 WL 3461643, at *3 (D.S.D. July 18, 2024) (Richter III).  As such, its scope is "extremely broad."  Id.

"Whether requested discovery is proportional to the needs of the case is a fact-intensive inquiry." Pearson v. Royal Canin USA, Inc., 4:22-CV-04018-KES, 2023 WL 5916437, at *3 (D.S.D. Sept. 11, 2023).  A court must consider:

> [T]he importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1).

Among the devices provided for by the Federal Rules of Civil Procedure to facilitate the exchange of discovery are interrogatories and requests for the production or inspection of documents.  See FED. R. CIV. P. 33–34. "Interrogatories allow a party to learn facts within an adversary's knowledge, 'so that questions of fact may be reduced to a minimum before trial.'" Stedillie

v. Milford Cas. Ins. Co., 4:23-CV-04048-KES, 2024 WL 449630, at *2 (D.S.D. Feb. 6, 2024) (quoting Onofrio v. Am. Beauty Macaroni Co., 11 F.R.D. 181, 184 (W.D. Mo. 1951) (cleaned up)). Requests for production allow a party to seek any document "in the responding party's possession, custody, or control," so long as it "relate[s] to any matter that may be inquired into under Rule 26(b)." Huggins v. Fed. Express Corp., 250 F.R.D. 404, 405 (E.D. Mo. 2008) (citation omitted); FED. R. CIV. P. 34(a).

Should a party refuse to produce discovery under these rules, Rule 37 allows the requesting party to move for "an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1), (a)(3)(B)(iii)–(iv). The movant "must make a threshold showing that the requested information falls within the scope of discovery under Rule 26(b)(1)." Sprint Commc'ns Co. L.P. v. Crow Creek Sioux Tribal Ct., 316 F.R.D. 254, 263–64 (D.S.D. 2016) (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992)). "If that showing is successful, the resisting party bears the burden of convincing the court otherwise." Woods v. JDHQ Hotels LLC, 4:23-CV-04026-RAL, 2024 WL 1886468, at *2 (D.S.D. Apr. 30, 2024) (citing Sprint Commc'ns Co., 316 F.R.D. at 264); see also Moses v. Halstead, 236 F.R.D. 667, 671 (D. Kan. 2006) ("When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery does not come within the scope of relevance."). "If the court determines the requests to be outside the scope allowed by Rule 26(b)(1), it must fashion appropriate limits." Stedillie, 2024 WL 449630, at *3 (citing FED. R. CIV. P. 26(b)(2)(c)(iii)).

**B.     The Contested Discovery**

**1.     Interrogatory Nos. 14 & 25**

Interrogatory No. 14 states:

> In the last ten (10) years, has Defendant been a party in a civil
> lawsuit alleging breach of contract, fraud, deceit, insurance bad
> faith and/or unfair claims practices, or been a party in a
> regulatory complaint brought against it, involving a weather-
> related property claim?  If so, identify the case by name, court and
> trial docket number, and indicate the substance of the allegations,
> as well as the outcome of the case.

Docket No. 15 at p. 8.

Interrogatory No. 25 is similar as to subject-matter, but expands in scope

to include entities related to Agraria:

> In the last ten (10) years, have You, including the prior formations
> of your corporation—including, but not limited to, North Dakota
> Farmers Union (NDFU), Farmers Union Service Association, Ltd.,
> (FUSA), Farmers Union Mutual Insurance Company (FUMIC ND) /
> (FUMIC AR), Agraria Mutual Group (AMG), Farmers Union
> Insurance Company, North Dakota Farmers Union, South Dakota
> Farmers Union and Utah Farmers Union—been a party in a civil
> lawsuit alleging breach of contract, fraud, deceit, insurance bad
> faith and/or unfair claims practices, or been a party in a
> regulatory complaint brought against it, involving a weather-
> related property claim?  If so, identify the case by name, the entity
> involved, court and trial docket number, and indicate the
> substance of the allegations, as well as the outcome of the case.

Id. at pp. 8–9.

Interrogatory No. 14 was included in Mr. Hirschman's first set of

interrogatories.  Docket No. 17-2 at p. 6.  And in its answer, subject to some

boilerplate objections, Agraria responded, "no."  Id.  In recognition of "various

corporate reorganizations" Agraria had undergone, Mr. Hirschman propounded

a second set of discovery requests on Agraria that expanded the scope to

6

include related organizations.  Docket No. 17, ¶ 9.  This second set included Interrogatory No. 25.  See Docket No. 17-4 at p. 2.  Agraria objected on multiple grounds: proportionality, relevance, its harassing nature, its "attempt . . . to increase litigation defense costs through discovery," and overbreadth due to both "seek[ing] information from entities other than Agraria, the named Defendant" and "seek[ing] information from jurisdictions outside of the subject matter of the current lawsuit."  Id.  Notwithstanding these objections, Agraria asserted that it "does not maintain a data base of civil lawsuits involving the entities identified above.  Therefore, Agraria does not possess the information Plaintiff seeks via this Interrogatory."  Id.

Brad Nold is "the Chief Claims Officer for Agraria and Farmers Union Insurance."  Docket No. 23, ¶ 1.  During Agraria's 30(b)(6) deposition, Nold testified that he had previously been deposed in breach of contract and bad faith cases "while [he] was working for Agraria."  Docket No. 17-8 at 44:17—45:5.   He also testified that he has previously testified at claims-related trials.  Id. at 47:15–19.  He testified that Agraria keeps a copy of summons and complaints in their corresponding claims files, and "hold[s] onto those as data retention statutes require."  Id. at 47:23—48:1.  Agraria's practice is to also "cross-reference the law firm that represented [it] and . . . have the law firm hold" other files; specifically mentioned in Nold's testimony were deposition and trial transcripts.  Id. at 48:2–7.  When asked whether Nold "would have access to the deposition transcripts if [he] needed them," he testified, "Yes."  Id. at 48:8–10.

7

Sensing a disparity between Agraria's discovery response and this testimony, counsel for Mr. Hirschman requested that Agraria supplement its answer to Interrogatory No. 14.  Docket No. 17-9 at p. 4.  Agraria so-supplemented, apparently to both Interrogatory Nos. 14 & 25, stating that "the information sought . . . seeks information that is publicly available and, thus is equally accessible to Plaintiff."  Docket No. 17-10 at p. 2.  It also stated "neither Agraria, nor any entity affiliated with Agraria, including Farmers Union Insurance and Farmers Union Mutual Insurance Company, and including Agraria employee, Brad Nold, maintains the information sought via this Interrogatory.  Agraria has no means of responding to this Interrogatory."  Id.

In its brief in opposition, Agraria adds that:

> Brad Nold did <u>not</u> testify that he had been deposed as a witness in any bad faith litigation brought against <u>Agraria</u>.  Nold testified that he has been deposed in bad faith litigation against other insurance companies, but not Agraria.  Hirschman's brief attempts to mislead the Court on this topic.  At his deposition, and now reaffirmed via his affidavit, Nold specifically testified that he is not aware of Agraria ever being sued for bad faith.

Docket No. 22 at p. 13.

The court first notes that this assertion is either incorrect or a distinction without a difference.  Nold testified at his deposition that he was deposed in breach of contract or insurance bad faith cases "while [he] was working for Agraria."  Docket No. 17-8 at 44:17—45:5.  He did testify that every such deposition "has been in North Dakota except for one, which was in Arkansas."  Id. at 45:17–19.  And according to his testimony and Agraria's website, depending on the state (North Dakota, South Dakota, Utah, or Arkansas), a

8

customer may be dealing with a differently named insurance line or related legal entity.  See id. at 43:14–19.[4]  But Nold made clear that his "philosophy in running the claims department" is overarching as to all four states.  Docket No. 24-3 at 35:13–16.  So, if Mr. Hirschman seeks discovery to make the fact of Agraria's "pattern and practice of refusing to provide coverage" more probable, Docket No. 1, ¶ 57, it makes no difference whether that pattern or practice manifests itself under the name of "Agraria Insurance Company," "Farmers Union Insurance Company," or "Farmers Union Mutual Insurance Company." See Docket No. 37-1.

For purposes of all requests in the instant motion, the court holds that where the court refers to "Agraria," or orders "Agraria" to produce discovery, the court refers to any insurance line or insurance company under the umbrella of Agraria Mutual Group or its predecessors, and, to the extent Farmers Union Mutual Insurance Company of Arkansas is outside that definition, the court includes it as well.[5]  Id.; see also About Us, supra note 4. By limiting the entities to insurers, the court necessarily excludes related entities external to the insurance industry, such as South Dakota Farmers Union.[6]

---

[4] See also About Us, AGRARIA INS. CO., https://perma.cc/95R2-QJHM (last visited August 28, 2024).

[5] Information or documents belonging to Farmers Union Mutual Insurance Company domiciled in Arkansas, before its affiliation with Agraria's predecessor in 2018, are not responsive.  See About Us, supra note 4.

[6] In this respect, the court agrees with Agraria's overbreadth assertion.  See Docket No. 22 at p. 12.

Returning to the interrogatories at issue, the court does not accept that "Agraria has no means of responding to this Interrogatory." Docket No. 17-10 at p. 2. Nold testified at his deposition that information related to lawsuits are kept in claim files at Agraria. Docket No. 17-8 at 47:23—48:1. That testimony stands in stark contrast to Agraria's now-stated position that "Agraria has repeatedly advised [Mr.] Hirschman that it does not maintain information . . . responsive to these discovery requests." Docket No. 22 at p. 12. While the information held at Agraria may not paint the complete picture Mr. Hirschman seeks, it is Agraria's discovery obligation to look for what it can provide. Agraria's suggestion that the public availability of such information levels the burden of finding it is unacceptable. Agraria's institutional knowledge can direct it to the information with an efficiency unmatched by blind court inquiries or searches of public databases.

This court recently affirmed its position that discovery of prior legal actions, limited to the past ten years, is relevant in insurance disputes. Rapid City/BH Lodging, LLC v. Amguard Ins. Co., 4:23-CV-04053-RAL, 2024 WL 1937858, at *3 (D.S.D. May 2, 2024). Agraria finds the exercise disproportional given the stated value of Mr. Hirschman's claim but fails to provide context that would allow the court to properly consider that argument. Docket No. 22 at p. 12; see Bogensberger v. USAA Cas. Ins. Co., 4:21-CV-04064-KES, 2024 WL 3415892, at *6 (D.S.D. July 15, 2024) (resisting party "must provide facts demonstrating how the request is disproportionate"). Instead, Agraria throws its hands in the air and unpersuasively asserts its

inability to produce *anything*.  That is insufficient resistance to the motion.
Woods, 2024 WL 1886468, at *2.

Subject to the narrowing of responsive entities described above, Agraria is ordered to produce responsive discovery to Interrogatory Nos. 14 & 25.  The motion to compel these interrogatories is accordingly granted in part and denied in part.

### 2.    Request for Production No. 6.

Request for Production No. 6 states:

> Produce any and all documents relating to regulatory actions including, but not Limited to, suspension or revocation proceedings, Market Conduct Examinations, Cease and Desist Orders, Consent Orders, Reports of Examinations, Corrective Orders or Corrective Action Plans, involving Defendant's property claims handling process from the past ten (10) years.  This Request is not limited to South Dakota.

Docket No. 15 at p. 9.

Agraria responded to this request, "none."  Docket No. 17-2 at p. 10.  It provided the same response in its first supplemental responses. Docket No. 17-7 at p. 12.  And it provided the same response in its second supplemental responses.  Docket No. 17-10 at p. 5.

Mr. Hirschman groups this request in with Interrogatories Nos. 14 & 25, discussed in Section B1, supra.  But the court finds the subject-matter distinct.  Mr. Hirschman points the court to Brad Nold's deposition testimony concerning the filing of "summons and complaints" in a claim file and having access to "deposition [or trial] transcripts" as evidence of the existence of the documents sought here.  Docket No. 15

11

at p. 10.  But complaints and summons, deposition transcripts, trial transcripts—these are not "market conduct examinations" or any of the type of documents described in Request for Production No. 6.  As to *those* documents, Agraria asserts that none exist.  If Mr. Hirschman disagrees, "it is [his] burden to demonstrate otherwise."  <u>Roemen v. United States</u>, 4:19-CV-04006-LLP, 2023 WL 6808348, at *6 (D.S.D. Oct. 16, 2023) (citation omitted).  Mr. Hirschman has not met that burden, and the court cannot compel what does not exist.

The motion to compel as to Request for Production No. 6 is denied.

### 3.     Interrogatory Nos. 15 & 26

Interrogatory No. 15 states:

Identify any and all weather-related property claims submitted to Defendant by its insureds within a five-state radius of the Property (including South Dakota, North Dakota, Minnesota, Nebraska, Montana and Iowa) from the last ten (10) years, where Defendant denied any portion of a weather-related property claim.  "Identify" means stating:

a.    The name, address, email and phone number of Defendant's insured(s) who made said claim;

b.    The date the claim was made;

c.    Whether Defendant or any person or organization on its behalf performed any inspections of the property;

d.    The name, address, email, and phone number of the person or company who performed said inspection(s);

e.    Whether a third-party was hired to analyze the property's damage, and if so, identify the third-party;

12

      f.      The amount of the deductible;

      g.      The amount of the property damage;

      h.      Whether the insured(s), or anyone on the insured's behalf, disputed Defendant's initial determination of the claim;

      i.      Defendant's response to the insured's dispute; and

      j.      The status of the claim or dispute (claim denied, in litigation, claim paid, etc.).

Docket No. 17-2 at pp. 6–7.

Using the same definition of "Identify," Interrogatory No. 26 states:

Identify any and all weather-related property claims submitted to You, including the prior formations of your corporation—including, but not limited to, North Dakota Farmers Union (NDFU), Farmers Union Service Association, Ltd., (FUSA), Farmers Union Mutual Insurance Company (FUMIC ND)/(FUMIC AR), Agraria Mutual Group (AMG), Farmers Union Insurance Company, North Dakota Farmers Union, South Dakota Farmers Union and Utah Farmers Union—by its insureds within a five-state radius of the Property (including South Dakota, North Dakota, Minnesota, Nebraska, Montana and Iowa) from the last ten (10) years, where You denied any portion of a weather-related property claim.

Docket No. 17-4 at pp. 2–3.

Interrogatory No. 15 was included in Mr. Hirschman's first set of interrogatories. Docket No. 17-2 at pp. 6–7. Subject to some boilerplate objections, Agraria responded "Agraria has never denied a weather-related claim where the duty to indemnify was owed." Id. at p. 7. Interrogatory No. 26, more expansive as to the responding entities, was included in Mr. Hirschman's second set of interrogatories. Docket No. 17-4 at pp. 2–3.

Agraria objected on the grounds that the interrogatory sought "information from entities other than the named Defendant," sought "information from jurisdictions outside of the subject matter of the current lawsuit," sought discovery that does not "relate to the merits of Plaintiff's claims," and sought the private information of its insureds.  Id. at p. 3.  Agraria further stated that it does "not maintain a data base of claims in which Agraria ' . . . denied any portion of a weather-related property claim' . . . and therefore, does not maintain the information" Mr. Hirschman sought.  Id.  Agraria's "does not maintain" objection was then added to its answer to Interrogatory No. 15 in its second supplemental answers.  Docket No. 17-10 at pp. 2–3.

In its brief in opposition, Agraria states that providing a response to these interrogatories would require the manual review of 10 years of individual claims filed from multiple insurance companies, which would take thousands of hours to complete.  Docket No. 22 at pp. 15–16.

Mr. Hirschman argues that the sought discovery is relevant to establish a pattern and practice of performing sham investigations and offering unreasonably low settlement amounts.  Docket No. 30 at pp. 15–16 ("The bad faith actions Defendant took on other insured's weather-related claims will help to establish its pattern and practice of performing sham investigations and unreasonably offering low settlement amounts.").

But that explanation of relevance presumes the denials were conducted in bad faith.  On their face, nothing about these interrogatories will allow Mr. Hirschman to determine the existence of patterns and practices of bad

14

faith.  The interrogatories do not even ask for the reason "any portion of" the claim was denied.  Presumably, Mr. Hirschman seeks to contact the former or current customers of Agraria, or its hired investigators, to fill the gaps.  And if they filled those gaps, the district court would then be required to conduct mini trials as to the reasonableness of past denials, which would then require Agraria to defend itself over claims not part of this lawsuit that occurred up to (now reduced to five) years ago.  See id. at p. 17.  This is more of a burden than the court will allow.  The mere fact of a partial denial of a weather-related claim is simply too attenuated to Mr. Hirschman's claims for this discovery to be proportional when considering the thousands of hours Agraria will spend amassing what is assured to be at least partially irrelevant evidence.  These two requests are broader by far than discovery requests seeking information about actual claims asserted of bad faith, breach of contract, or regulatory actions.  Yes, this court has warned insurers that the failure to make material inquiries searchable in their database will not shield them from discovery.  See, e.g., Stedillie, 2024 WL 449630, at *7.  But that is not the same as punishing insurers for failing to anticipate every query a plaintiff can cobble together.

The motion to compel as to Interrogatory Nos. 15 & 26 is denied.

### 4.    Request for Production Nos. 7 & 30

Request for Production No. 7 states:

> Provide copies of any Department of Insurance consumer complaints involving Defendant's handling of property claims from the past ten (10) years.  This Request is not limited to South Dakota.

Docket No. 15 at p. 13.

Request for Production No. 30 states:

Provide copies of any Department of Insurance consumer complaints involving Your handling of property claims from the past ten (10) years.  This Request is not limited to South Dakota. This Request includes Department of Insurance consumer complaints brought against the prior formations of Your corporation—including, but not limited to, North Dakota Farmers Union (NDFU), Farmers Union Service Association, Ltd. (FUSA), Farmers Union Mutual Insurance Company (FUMIC ND)/(FUMIC AR), Agraria Mutual Group (AMG), Farmers Union Insurance Company, North Dakota Farmers Union, South Dakota Farmers Union and Utah Farmers Union.

Id.

Request for Production No. 7 was included in Mr. Hirschman's first set of requests, and, subject to some boilerplate objections, Agraria responded, "none."  Docket No. 17-2 at pp. 10–11.  Request for Production No. 30, with its expanded group of entities, was added to Mr. Hirschman's second set.  Docket No. 17-4 at p. 4.  Agraria made boilerplate objections on proportionality and relevance grounds.  Id.  It also argued overbreadth on the grounds that the request sought "information from entities other than Agraria, the named Defendant," and "information from jurisdictions outside of the subject matter of the current lawsuit."  Id.  It also objected that the request amounted to harassment.  Id. at pp. 4–5.  Subject to these objections, Agraria stated "as it relates to Agraria, none.  Agraria is not aware of any 'Department of Insurance consumer complaints involving Your (Agraria's) handling of property claims from the past ten (10) years."  Id. at p. 5.

At some point, Agraria provided a "Complaint Record," a spreadsheet "intended to track and document written complaints to the North Dakota Insurance Department and the Arkansas Insurance Department."  Docket No.

16

17-10 at pp. 10–11.  The spreadsheet contains columns including the name of the complaint respondent (always Brad Nold), the policy number, insured name, complainant, claim number, date received, date closed, and state of origin.  Id. at p. 10.

Mr. Hirschman argues that this spreadsheet is not responsive to the requests, which seek copies of the complaints.  Docket No. 15 at pp. 13–14. Mr. Hirschman also points out that the spreadsheet is limited to North Dakota and Arkansas, whereas Agraria also conducts business in Utah and South Dakota.  Id. at p. 13.

Agraria argues that the list represents a full accounting of all complaints responsive to the requests.  Docket No. 22 at p. 18.  It also argues that it "produced the information Hirschman sought."  Id. at p. 19.

As to the first argument, the court notes that while the purpose statement of the spreadsheet limits itself to complaints filed in North Dakota and Arkansas, the final entry is a complaint out of South Dakota.  Docket No. 17-10 at p. 11.  And so, it does not appear Agraria is "unilaterally limit[ing]" the request as to geography.  Docket No. 15 at p. 13.  Brad Nold testified at deposition that South Dakota is a relatively new, and slow-growing market for Agraria.  Docket No. 24-3 at 15:4–7.  The court is convinced that Agraria listed what exists, at least from 2017, and since Mr. Hirschman has now truncated his request to the past five years, see Docket No. 30 at p. 19, producing copies of the complaints on the list from the past five years would render the response complete.

17

But Agraria did not produce copies of the complaints.  Agraria argues it "produced the information . . . sought."  No, it did not.  The requests for production sought "copies of . . . consumer complaints."  Consumer complaints contain, *inter alia*, details about the insured's dispute and desired resolution that are missing from Agraria's spreadsheet.  These complaints are "relevant for the same reason . . . information about past bad faith claims [are]:  [they] may tend to show a pattern or practice of business conduct . . . that shows [Agraria] denied claims it knew were covered, or that it acted with reckless disregard in denying such claims."  Schultz v. Sentinel Ins. Co., Ltd., 4:15-CV-04160-LLP, 2016 WL 3149686, at *13 (D.S.D. June 3, 2016) (citations omitted).

This court recently reminded the parties in Richter that it is the actual forms that are responsive to such requests, not a list such as was provided here.  Richter v. XL Ins. Am. Inc., 4:23-CV-04094-CCT, 2024 WL 3400698, at *4 (D.S.D. July 12, 2024) (Richter I).  Rule 34 does not bestow on parties the freedom to reimagine the form of response to a request for production in the manner Agraria did here.  Rule 34 provides precisely two options:  produce copies of the documents or provide an opportunity to inspect them.  FED. R. CIV. P. 34(b)(2)(B).  Agraria must choose one.

The court grants the motion to compel as to Request for Production Nos. 7 & 30 for the most recent five years and denies the motion as moot as to the earlier five.

**5.      Request for Production No. 11**

Request for Production No. 11 states:

> For each individual who assisted with the investigation or
> determination of the Plaintiff's claim, as well as their supervisor
> and their supervisor's supervisor, produce said person's personnel
> file.  Defendant may redact or withhold social security numbers,
> health and life insurance information, condition or treatment
> information, and bank, credit card or other financial account
> numbers for former and current employees.

Docket No. 15 at pp. 14–15.

Subject to some boilerplate objections, Agraria responded, "Agraria does

not maintain personnel files for these individuals."  Docket No. 17-2 at p. 12.

In its first supplemental responses, Agraria reiterated that position and stated

that "Brad Nold and Spencer [Flaten] will be able to answer questions related to

their employment with Agraria."  Docket No. 17-7 at p. 14.

At his deposition, Brad Nold testified that Agraria previously kept annual

review documentation for employees, but "[n]ot anymore."  Docket No. 17-8 at

89:12–19.  That testimony serves as the foundation of Mr. Hirschman's

argument that Agraria is withholding responsive discovery.  Docket No. 15 at

p. 15.  Mr. Hirschman states, "Plaintiff respectfully requests that the Court

order Defendant to produce the personnel documents in its possession that

Mr. Nold confirmed exist."  Docket No. 30 at p. 19.

But Nold did not confirm that the sought documents exist.  When asked

whether Agraria "keep[s] any kind of HR documentation" related to

performance reviews, he replied "Not anymore."  Docket No. 17-8 at 89:12–15.

That is not a confirmation that the sought documents exist.  It is a

confirmation that they do not.  And since they do not, there is nothing to compel.

The motion to compel Request for Production No. 11 is denied.  The court notes that plaintiff's discovery request is not limited by any time reference—i.e. it does not say "for the last 5 years."  Mr. Nold's testimony is that, at some unspecified point in time in the past, Agraria did retain these documents.  The court reminds Agraria that it is under a continuing duty to supplement prior discovery responses.  If Agraria still has older personnel files responsive to this request, it is under a duty to disclose them even if it no longer maintains personnel files now.

### 6.    Request for Production Nos. 13 & 31

Request for Production No. 13 states:

> Produce any and all affidavits, transcripts of depositions or trial testimony of any of Defendant's employees or officers in any suit alleging breach of contract, fraud, deceit, bad faith and/or unfair claims practices in a case arising out of a first-party property/weather related damage claim, from the past ten (10) years, brought within the states of South Dakota, North Dakota, Minnesota, Nebraska, Montana and/or Iowa.

Docket No. 15 at pp. 15–16.

Request for Production No. 31 states:

> Produce any and all affidavits, transcripts of depositions or trial testimony of any of Your employees or officers in any suit alleging breach of contract, fraud, deceit, bad faith and/or unfair claims practices in a case arising out of a first-party property/weather related damage claim, from the past ten (10) years, brought within the states of South Dakota, North Dakota, Minnesota, Nebraska, Montana and/or Iowa.  This Request includes the [stated] information from any employees or officers of the prior formations of Your corporation, including but not limited to, North Dakota Farmers Union (NDFU), Farmers Union Service Association, Ltd.,

20

(FUSA), Farmers Union Mutual Insurance Company (FUMIC
ND)/(FUMIC AR), Agraria Mutual Group (AMG), Farmers Union
Insurance Company, North Dakota Farmers Union, South Dakota
Farmers Union and Utah Farmers Union.

Docket No. 15 at p. 16.

Request for Production No. 13 was included in Mr. Hirschman's first set
of requests.  Docket No. 17-2 at p. 12.  Agraria made some boilerplate
objections and objected that "such information would be publicly accessible,
and therefore equally available to Plaintiff." Id.  Subject to those objections,
Agraria stated it was "not aware of any such suit, and therefore, does not have
documents responsive to this Request." Id.

Request for Production No. 31, with its expanded group of responsive
entities, was included in Mr. Hirschman's second set of requests.  Agraria
objected that the request was overly broad "as it seeks information from
entities other than Agraria, the named Defendant," and "seeks information
from jurisdictions outside of the subject matter of the current lawsuit."  Docket
No. 17-4 at p. 5.  Subject to those objections, Agraria stated "as it relates to
Agraria's employees and officers, none." Id.

At his deposition, Brad Nold testified that he has testified at trial "five,
six, seven times.  The most recent being two summers ago."  Docket No. 17-8
at 47:15–19.  Mr. Hirschman points to this testimony as evidence that the
sought documents exist.  Docket No. 15 at pp. 16–17.

Nold was also asked whether "testimony in depositions and . . . at trial
[was] kept in the claims files[s]."  Docket No. 17-8 at 48:2–4.  Nold answered,
"Typically, no.  We cross reference the law firm that represented us and we

have the law firm hold those files for us." Id. at 48:5–7.  When asked whether

he would have access to them if he needed them, Nold replied, "Yes." Id. at

48:8–10.

Agraria points to these same excerpts of Nold's testimony for its

proposition that "Agraria cannot produce documents it does not maintain."

Docket No. 22 at p. 20.

In his reply brief, Mr. Hirschman argues that if Agraria can access the

documents as Nold alleged, they are "within [its] custody, possession and

control."  Docket No. 30 at p. 20 (internal quotation marks omitted); see FED. R.

CIV. P. 34(a)(1).  Mr. Hirschman also reduced his request to the past five years.

Docket No. 30 at p. 20.

This court has previously affirmed the relevance of deposition and trial

transcripts from cases that "share some factual or legal vector" with the case at

hand.  Bogensberger, 2024 WL 3415892, at *6 (citations omitted).  And this

court already ordered Agraria to produce information related to the lawsuits

contemplated here to resolve Interrogatory Nos. 14 & 25.  See Section B1,

supra.  The court finds no undue burden in Agraria inquiring with the cross-

referenced defense counsel for the transcripts Nold testified he could access.

If a party "has the legal right to obtain the document," then the

document is within that party's "control" and, thus, subject to production

under Rule 34.  See 8B Charles A. Wright, Arthur R. Miller, & Richard L.

Marcus, Fed. Practice & Procedure, §2210 (3d ed. 2020).  "Because a client has

the right, and the ready ability, to obtain copies of documents gathered or

created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control." <u>ASPCA v. Ringling Bros. & Barnum & Bailey Circus</u>, 233 F.R.D. 209, 212 (D.D.C. 2006) (citing <u>Poole ex rel. Elliott v. Textron, Inc.</u>, 192 F.R.D. 494, 501 (D. Md. 2000); <u>Poppino v. Jones Store Co.</u>, 1 F.R.D. 215, 219 (W.D. Mo. 1940)).

Because these requests are narrowed temporally to five years, and as to the scope of entities in the same manner as Interrogatory Nos. 14 & 25, the court grants in part and denies in part the motion to compel as to both Request for Production Nos. 13 & 31.

### 7. Request for Production Nos. 16 & 17

Request for Production No. 16 states:

> Produce all human resource manuals, salary administration manuals, personnel bulletins or manuals, orientation booklets, directives, memos or other documents used during the previous ten (10) years to inform claims personnel, managers, and/or adjusters of the manner in which they can expect to receive salary increases, bonuses or other commissions.

Docket No. 15 at p. 17.

Request for Production No. 17 states:

> Produce human resources manuals, salary administration manuals, personnel bulletins or manuals, orientation booklets, directives, memos or other documents used during the previous ten (10) years that establish the goals, targets, and objectives for claims personnel, managers, and/or adjusters involved with weather-related property damage claims.

<u>Id.</u>

Agraria produced its employee handbook but nothing else. <u>Id.</u> at p. 17; <u>see</u> Docket No. 31-6.  Mr. Hirschman considers that response incomplete

because Brad Nold testified at his deposition that the percentage of Agraria's profit distributed as a bonus is determined using a profitability scale developed by the board of directors.  Docket No. 15 at pp. 17–18.  That scale/formula was not produced.  Id. at p. 18.  Agraria argues that Nold's testimony sufficiently responds to the requests.  Docket No. 22 at p. 20.  But deposition testimony does not substitute for the production of documents under Rule 34.  To repeat, it is not for Agraria to customize its discovery responses however it sees fit.  If Agraria is in possession of documents responsive to these requests, they are relevant, see Bogensberger, 2024 WL 3415892, at *10, and they must be produced.

The motion to compel Request for Production Nos. 16 & 17 is granted.

## C.    Attorney's Fees

Mr. Hirschman seeks attorney's fees under Federal Rule of Civil Procedure 37(a)(5)(A).  Docket No. 15 at p. 18.  But this court is prohibited from awarding such fees when "the opposing party's nondisclosure, response, or objection was substantially justified."  Stedillie, 2024 WL 449630, at *11 (quoting Fed. R. Civ. P. 37(a)(5)(A)(ii)).  "Where, as here, defendants prevailed on a meaningful percentage of matters, the court finds such substantial justification exists."  Id. (citation omitted).  The motion for attorney's fees is denied.

## CONCLUSION

Based on the foregoing facts, law, and analysis, it is:

24

ORDERED that Mr. Hirschman's Motion to Compel [Docket No. 14] is granted in part and denied in part in accordance with this opinion.  Defendants shall provide, within 21 days of the date of this order, information and documents responsive to the granted discovery requests.

### NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 5th day of September, 2024.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge